Good morning. Good morning, Your Honors. If I may, could I please reserve five minutes for rebuttal? You may proceed. Thank you, and good morning again. My name is Terry Kilpatrick. I'm one of the attorneys for Palla Farms, who's here pursuing a bad faith insurance claim on behalf of Gemini's insurance company's insured Dole Oil Company. What I would like to do is start with a quick recap of how we got here today. Dole Oil Company is a small oil company in the Central Valley run by Karen Dole, who took over when her husband had passed away. And they're in the business of pulling oil and saltwater out of the ground, separating it out, and then re-injecting that saltwater back into a well bore underground. And unfortunately, what happened is that saltwater broke through some formations, it got into the fresh groundwater that Palla Farms used to irrigate its crops, and it killed and harmed thousands of trees, and it cost millions of dollars. Well, Mrs. Dole contacted the Gemini insurance company and said, I've been sued, please defend me. And Gemini wrote back and said, no, we're not going to do that, because we have a pollution exclusion. We do not insure pollution incidents. And the original letter that Gemini wrote, and in the briefs, to your honors, submitted in this case, Gemini spent a lot of time saying, you're not covered under Section 2B of the policy, that is pollution costs. Well, Dole Oil Company never sought coverage under 2B. Dole Oil Company was seeking coverage under 2A. That's the property damage section. And I'm going to get into that in just a little more detail in a moment. Well, the main argument in your opening brief appears to be that saltwater is not a pollutant because it is exempted from the definition of waste, which in turn exempts it from the definition of pollutant. However, under McKinnon versus Trek Insurance Exchange, it seems to me that the initial question is whether a reasonable layperson would commonly understand salt water to be an environmental pollutant. Do you concede that a reasonable layperson would think that saltwater is an environmental pollutant? Did you argue this in your opening brief, or if so, where? It's a good question, your honor, and I will find that site for you. But that is the issue. And I don't think it's essential that we answer that question, to be quite honest. I think it's just another reason to reverse the decision in this case. But saltwater is a natural element pulled up into the ground. People typically don't treat, and then it's re-injected underground. I don't think a reasonable layperson would consider saltwater as a pollutant. I thought you acknowledged in the proceedings below that saltwater is an irritant or contaminant. I mean, isn't that the case? Yes, we did concede that, your honor. And again, I don't think that's the essential question for this case. So I will concede it again, that saltwater can be considered as a contaminant. Now, I will say in the truck exchange case, they do address that issue. And I do believe that is a basis. Still, we have argued it below, and we argue it again in this court, that saltwater really should not be considered a pollutant. But even if it is, it's the definition of pollutant that is the problem here for Gemini, because pollution is defined as a contaminant or irritant, and soot and vapor and waste. And waste is defined as recyclable or unwanted material, but not saltwater. But why can saltwater not be waste and still be an irritant and contaminant? Well, because that's how the policy terms are defined. That's what Gemini decided how they were going to do this. So, you know, I think it was the truck case too, saying anything in an extreme could be a contaminant or irritant. You know, enough water will kill somebody. You drink too much water, you can die from that. Well, it doesn't make fresh water a dangerous chemical or contaminant or an irritant. So, hypothetically, if we agree with the district court that saltwater is a pollutant for purposes of the exclusion, there still seems to be one remaining question, namely whether your underlying claim against Dole could still potentially fall within the policy. So, assuming saltwater is a pollutant, does your complaint against Dole potentially give rise to liability that could be covered by the policy? Or could your complaint against Dole be amended to give rise to liability that would be covered under the policy? Please explain that to me. Well, I guess I want to be careful about what we're talking about because what I think that the district court did, what the magistrate judge did, was try to divide the meaning of pollutant and the meaning of waste and that they're used two different ways and they mean two different things. We have always contended, and we still contend, that the definition of pollution includes pollutants and waste. So, when we're talking about a pollution exclusion, if waste is part of that definition and waste excludes saltwater, then saltwater is not a pollutant. Now, what the district, what the magistrate judge did, which I believe was erroneous, and it's why I was pointing out these two sections, sections 2a and 2b. Section 2a is a straight property damage claim. The damages and property damage are the or the replacement of the property. The damage and pollution costs are investigating the cause of the pollution, the remediation and removal of the pollution, the monitoring of the pollution, plus it has all these other conditions. You need to know about the leak within 30 days. You need to notify Gemini about it within 90 days. So, these two sections for property damage and pollution costs, they're different. They have different risks. They have different conditions. And that's important because what Gemini and the magistrate judge were saying is, hey, we're taking on all these risks. Well, yes, you are, but you've resolved that in the way you're going to deal with it because you have two separate sections. Section 2a on property damage has to stand on its own. And I want you to imagine for a moment, imagine if this policy written in there was no 2b. All it was was 2a saying we'll pay for property damage caused by an occurrence. And clearly, this is an occurrence. This is an accident. The saltwater broke through. And we're going to define pollution as soot and vapor and waste, and waste is in saltwater. What ordinary layperson would think that saltwater somehow is a pollutant? Why would that word, why would the word waste be in the definition of pollution, but for to define pollution? That's its whole purpose, right? When word A uses word B to define its terms, the terms and meaning of word B become part of word A. That is how definitions work. So we need, section 2a is a standalone provision in terms of coverages. That's how the policy deals with it, right? So I think an ordinary person and the reasonable expectations of an insured looking at that policy would go, it sure looks like saltwater is excluded from the terms of pollution. And if you go to the policy too, I mean, in the actual exclusionary language, I'm looking at page 1347 of the volume 9 of the excerpts of record, and it says this is the pollution exclusion. We don't cover for the discharge of pollutants, caps all bold. And then it goes on. We don't cover for any disposal or treatment of waste. And it goes on again. We don't, pollution doesn't mean waste handled or treated by you. Well, if I'm an insured person and my job, my business is re-injecting waste into well bores, I'm looking at this policy going, again, it sure looks like saltwater is being singled out as being a non-pollutant. What Gemini has done, they engage in this very complicated analysis about buyback provisions. Well, I don't know much about the oil business, but what I do know is the buyback provision, that's nowhere to be found in this insurance agreement. There is nowhere in the insurance agreement that says, hey, lay person, hey, insured person, be sure that when you're making a claim, read through not only A, which you're making a claim under, read through B, figure out if there's going to be coverages under B. Oh, and by the way, this presumes all this knowledge of the oil business. I guess is the question, I mean, we're all reasonable people, but the audience here is the insured, right? Not the plaintiff who's bringing a suit against the insured. And this is a policy that's targeted towards energy production, is it not? So I guess it doesn't strike me that that does all of the work. I mean, the insurance, there's insurance contractors not with any potential plaintiff. If the insured is a tort fees or the audience is the insured, we're trying to understand where was the meeting of the minds between those two. So the fact that it has these energy terms of art doesn't seem to be disqualifying of their interpretation. Well, it's a great question. And the Gemini and magistrate judge both talked about that. Hey, these insurance policies have to do with negotiations and industry standards and allocations of risks and reserves. Look for that anywhere in the record. There is nothing in the record. I mean, first of all, it's inadmissible parole evidence, but there is nothing about, you know, Mrs. Dole's sophistication, her negotiations. We're left with the meaning of this contract. And I think it is inappropriate, inadmissible for the magistrate judge to rule that all these industry standards, none of which I know about, none of which are in the record anywhere that I can see, had something to do with how Mrs. Dole would read that contract. So I see I've used up my time. I won't reserve any time for rebuttal. Good morning. Good morning, Your Honors. May it please the Court. Alex Potenti for Gemini Pala did waive and concede the issue of is saltwater a pollutant? It did not raise this issue in the underlying case. It did not raise it in its opening brief. It raised it for the first time on appeal. But on the merits of that issue, this is not just saltwater. It's produced water. Produced water is water that's withdrawn from a well borer that contains not only saltwater, but boron, sometimes metals and other dissolved solids. The problem, of course, is that saltwater and the other produced fluids that were re-injected into the well borer leaked. They leaked not in a way that was covered under this policy, but in a gradual way. It wasn't an incident. Right. It wasn't an eligible pollution. I mean, there's no doubt that a whole bunch of trees got destroyed and that was caused by this leak. But it was a leak that gradually went into their water source and then... Right. It contaminated the water source and killed trees. This is the exact situation that McKinnon is talking about as what is the commonly understood definition of pollution. Yes. So McKinnon instructs us to put ourselves position of a layperson and understand how they might reasonably interpret the exclusionary language in the policy. So why would a layperson not believe that by excluding saltwater from a definition of waste, the policy also excluded saltwater from a definition of pollutant? After all, a pollutant is defined in part as waste. That's an excellent question. And it has a simple answer that's in the plain language of 2A, the very policy provision that PALA seeks recovery under. Pollutants, as applies to 2A, means any solid, liquid, gaseous or thermal, irritant or contaminant. And we know from McKinnon that this is an irritant or contaminant. It meets the definition of common understanding of the word pollute indicates that it is something that creates impurity, something objectionable and unwanted. And no one could possibly say that that saltwater and the other produced fluids that leaked into the aquifer were something that were unobjectionable or unwanted. They killed the trees. They rendered the potable aquifer unusable for that purpose. They were unwanted, unobjectional, and they constitute classical pollution. Thank you for drawing us for 2A. That is the provision at issue. Where are we finding the text that where 2A points to that definition of waste and pollution rather than the plaintiff's preferred one? Well, there is only one definition of pollution in the policy. If you look at the exclusion for pollution, that is the exclusion number 13. It applies to Section 2A bodily injury and property damage liability. So the exclusion that we are talking about that we are relying upon for this case applies only to 2A. And it excludes bodily injury or property damage arising out of or resulting from the actual alleged or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants. One at or any premises, site, or location which is or was at any time owned or occupied or rented or loaned to any insured. So we meet that standard. There is no dispute about that. Okay. Now help me with – do the same for waste. All right. So there is an exception in the pollution exclusion under 1 for an eligible pollution incident. And that eligible pollution incident has to be basically sudden, accidental, learned of within 30 and reported within 90 days, not met here. So there are some times in which when you re-inject salt water or produce water into a well bore, that they would be covered if it was an eligible pollution incident. But I guess – Hold on. I will get there. So if you look at 2 and 3 under the pollution exclusion, they exclude waste without exception. So if something is waste, it is never covered. If something is pollution, it is covered sometimes, just not here. So we intended, under the plain language of the agreement – and by the way, this contract is an ISO form. It is not written by us. It is not a manuscript form. It is a form that is drafted by the insurance services organization. It is designed for specifically oil producers. But they exclude waste expressly without exception. So if something – You get salt water under both definitions. You are getting something that is illogical, like salt water can both be excluded and both be covered. Is that – No, not at all, Your Honor. Not at all, Your Honor. So the definition of pollutant is an irritant or contaminant and it includes smoke, vapor, soot, fumes, acids, alkalides, chemicals and waste. And we know from Garamendi versus Golden Eagle and a half dozen other cases that the word including is merely illustrative. It is not restrictive. So – If you don't exclude salt water from the definition of waste, you can end up with illogical, I think, results under the policy. You would have rendered – that is exactly right. You would have rendered as mere surplusage the exception to the pollution exclusion because you would be saying that if it is waste, it is never covered, but we have these exceptions that are going to never be in play because waste can never be covered. So – but if we – I know two people that do insurance all the time. There are very illogical things to you, but going back to the layperson part of things, let's say if we find it reasonable that a layperson would not consider salt water, I'm saying hypothetically, an environmental pollutant, do you lose? If salt water – well, first of all – If we find that a layperson would not consider salt water an environmental pollutant, do you lose? No, because this is not just salt water. It is produced water. So this is – these are – this is salt water and chemicals that are drawn up and reinjected. So it is not just – it is not like you went out to the ocean and got a bucket full of salt water. It has got boron in it. It has got heavy metals in it. It has got a whole host of things. But – Because you have a couple of things going on here. It is – obviously, you can win under the policy, but the duty to defend is a different situation. And if things are – you know, you can have a duty to defend and still win, right? At issue – at issue currently is both the duty to defend and the duty to identify. We declined both. And the Seventh – the Ninth Circuit case, Street Surfing, says that if the language of the policy is clear and unambiguous and doesn't cover the laws, then we do not owe a duty to defend, where there is no factual dispute. Here, there is no factual dispute. Well, I guess it strikes me that you have walked us through two different definitions of waste. And so isn't that the very definition of ambiguity? There is the waste that – for one purpose, that is – in which salt water doesn't matter. And then there is the waste – the exact same word with, as you said, only a single definition that does all the work with respect to the pollution incident. So if there are two definitions, why isn't it ambiguous? I'm sorry. I'm not following that, Your Honor. Waste has one definition. Waste means a discarded, unusable, or unwanted substance or materials. And it says also that produced fluids are not waste. All that means is if you have a Venn diagram of pollution, right, and then you have waste, all waste is pollution, but not all pollution is waste. And the reason for that is because pollution is sometimes covered and waste is never covered. Waste is excluded under 2A, 2 and 3, but pollution has an exception that allows an eligible pollution incident to be covered if certain things are met. Sometimes it occurs to me, if we have to explain things on so many layers, could it be ambiguous to a layperson? No, that's street-surfing, Your Honor. There is no other reading of this. If one – particularly with regard to an environmental policy that's issued to an oil producer. That's what I'm saying. Hypothetically, if there is another or if it's ambiguous, at least to a layperson, wouldn't that trigger your duty to defend? But an ambiguity must – there must be a reasonable reading based on the plain language of the policy. And I would submit there is no reasonable reading here. Waste excludes produced fluids. Pollution is an irritant or contaminant, which Martinelli says in other cases that, you know, McKinnon among others, that something that's unwanted and that contaminates aquifers, that's a classic pollution. So there's really no dispute. And Paula Farms conceded that, it seems to me.  Below at a number of occasions. That's right. So, I mean, there's – Let me understand. I always like to understand the implications of things. Let's say, hypothetically, that I thought you had a duty to defend, but that you're right in your – you're ultimately right in your interpretation. But if I thought you had a duty to defend and you didn't hear, doesn't that – that puts you on that hook for that default judgment, doesn't it? It – that's a bit of a dispute. I think there still has to be coverage for the indemnity, but we would certainly owe defense costs and they would seek bad fate damages. So that would be – I mean, that does – That puts you on the hook for something. Yes. Except you had a something. Absolutely. And something a lot, possibly. Possibly. Yes, you are. Can I pick up more on the – I guess on the implications kind of industry-wide? So why is it important with respect to these policies that, you know, some saltwater, you know, counts, some saltwater doesn't? What's the policy behind the policy for these sorts of contracts? I mean, there is a case law in California that technical terms are to be read in the way that a person understanding the technical term would be – would read them a technical insured, right? So an oil producer is the audience for this policy. But here, the issue is you have a contaminant, you know, saltwater and a collection of other chemicals that leaked into the aquifer and poison trees. So that's the pollutant that's causing the pollution and that pollutant is not waste, so it's subject to the exceptions in the pollution exclusion, but they are not met here, so there's no coverage. So the idea of the – an example in which the produced – Fluids. Fluids would trigger coverage. What's an example in the business where – Right. What was – Great question. – insured getting this policy? Great, great. Yeah, so no, they were – so if the produced fluids re-injected into the bell ore – well, bell ore, war bell, bell – the hole. If they leaked in a manner that triggered the four discover within 30 and reported within 90 days, if those criteria had been met, there would be coverage. So we fully admit that produced water – and that's why it's not included in the definition of waste and it is included in the definition of pollutant – is covered in those circumstances when it leaks slowly. It has to be re-injected into a well borer and it has to leak out slowly and then we have – the insured has to learn of it in 30 days, the leak has to happen during the policy period, and they have to report it within 90 days. So it can't be too slow if it has to be notified – No, it can't be slow at all. It has to be sudden. Oh, it has to be sudden. That's right. That's right. Yes, okay. Yes, I misspoke. It has to be sort of a catastrophic failure. Okay, and that's the sorts of risks in general that you're able to – That's the risks that this policy reform provides coverage for. That's right. Thank you for that. I've made my points. Any other questions from the court? I don't think so. Thank you for your arguments. Thank you. Thank you, Your Honors.  Just a couple of points I would like to address. My friend, defense counsel, had mentioned that this is a standard foreign policy everybody uses. Again, I don't know that. I'm not an oil guy. I don't think that's anywhere in the record. And what I do know, however, is there is not one case, one case we could find that they could find, that the magistrate judge could find, where the offending chemical that we're talking about is excluded in the definition of terms of the policy. So, no case that says, we're here arguing whether pollution exclusion applies for saltwater or produced water or chlorine gas or whatever it is. Oh, but by the way, we're going to exclude that in this definition. And we're going to include that exclusion in the definition of the word pollutant. So, to me, that's a dispositive issue in this case. I also believe that this going into the eligible pollution incident issue, I don't understand that. Section 2A is Section 2A. It defines pollutants. Pollutants includes waste. Waste excludes saltwater and produced water. And as my friend said, you know, the list is illustrative. It's not exclusive, but definitions can be inclusive and exclusive, right? I don't agree with the Venn diagram. I don't think the waste is inside pollutants and it swallows everything. Because if it does, what is the exclusion for saltwater there for at all? What does that mean to a regular person? I don't think people think in terms of Venn diagrams and reading two policy provisions, one of which doesn't even apply to them. So, if a definition says it's A and B but not C and not D, well, that's the definition. And that's really what this definition says. Instead of just using the word waste and making us turn a page to go to that, they could have just written it all out under the term pollutants when they were defining the term, right? It's the same thing. So, right there in the definition of pollution is an exclusion of saltwater and produced water. That's what Doyle Oil Company did. That's their business. That was their reasonable expectation that this insurance policy is going to cover my business, which is separating oil from produced water and saltwater. And I get it. If I dump a bunch of oil on the ground, that's a pollutant and that's not covered. Not so with saltwater. Not so with produced water. So, we would ask that you reverse this decision. And, Your Honor, as you also said, the worst case here is we've got some ambiguities and confusion about this policy. Thank you very much.
judges: CALLAHAN, THOMAS, JOHNSTONE